Dear Charles W. Ehart
You have requested our opinion concerning a portion of the State alcoholic beverage law that prohibits wholesalers and manufacturers, and persons associated with them, from having a financial interest in a retail establishment. Specifically, you ask whether the term "financial interest" includes:
1. an ownership or stock interest in a retail licensee;
2. a loan to, or other credit relationship with, a retail licensee;
3. a guarantee of a loan or other security for the benefit of a retail licensee;
4. employment by a retail licensee.
You also ask whether the spouse of a person associated with a manufacturer or wholesaler may have a financial interest in a retail licensee.
We conclude that the term "financial interest" in this portion of the alcoholic beverage law includes, among other things, an ownership interest in, and employment with, a retail licensee. The alcoholic beverage law bars a manufacturer or wholesaler from providing a loan or loan guarantee for the benefit of a retailer outside of the ordinary course of business, regardless of whether it would be considered a financial interest. Whether a spouse of a person connected with a manufacturer or wholesaler may have a financial interest in a retail licensee depends on the nature of the spouse's interest and extent to which the spouses maintain separate finances.
 I Alcoholic Beverage Law
Since the enactment of the State alcoholic beverage law following the repeal of Prohibition in the early 1930's, State law has forbidden manufacturers and wholesalers of alcoholic beverages from having "any financial interest" in a retailer. Chapter 2, § 28, Laws of Maryland 1933 (Special Session). In its current form, the law states that:
 a business entity may not have any financial interest in the premises upon or in which any alcoholic beverage is sold at retail by any licensee or in any business conducted by any licensee.
Annotated Code of Maryland, Article 2B, § 12-104(b)(1). A "business entity" is defined to include the holder of a manufacturer's or wholesaler's license "or anyone connected to a holder." Id., § 12-104(a)(2). Moreover, manufacturers and wholesalers, as well as "anyone connected with" them:
 may not lend any money or other thing of value, make any gift, or offer any gratuity to any retail dealer.
Id., § 12-104(b)(2). The statute does not define the term "financial interest." Nor are there any regulations that define that term in this context.
 II Financial Interest in Retailer
A. Tied House Laws
The questions you pose require an interpretation of the term "financial interest" in § 12-104(b)(1). As the objective of statutory interpretation is to give effect to the intent of the Legislature,[1]
we look first to the purpose of the statute. Section 12-104 and related provisions of the State alcoholic beverage law are an effort to prevent "tied houses." See 46 Opinions of the Attorney General 8-9 (1961). A "tied house" is a retail outlet that is controlled by a manufacturer, wholesaler, or other entity in the chain of distribution. Seegenerally 45 Am. Jur. 2d Intoxicating Liquors §§ 114, 236. One of the perceived evils of a tied house is the concentration of liquor retailing in a few economically powerful entities. Wisconsin Wine SpiritInstitute v. Ley, 416 N.W.2d 914, 917 (Wis.App. 1987); Ted Sharpenter,Inc. v. Illinois Liquor Control Comm'n, 499 N.E.2d 669, 674 (Ill.App. 1986). Accordingly, the proscriptions against "tied houses" in federal[2] and state laws are designed "to assure the freest competition in the industry by preventing monopolistic practices, and to divorce entirely the wholesaler from the . . . retailer." Opinion of theWisconsin Attorney General, 67 Wis. Op. Atty. Gen. 337 (1978). See alsoOpinion of the Virginia Attorney General, 1997 WL 581037 (1997). Some courts have also suggested that another purpose of the prohibition against tied houses is to promote temperance, presumably by keeping liquor prices higher. See, e.g., Borman's, Inc. v. Michigan LiquorControl Com'n, 195 N.W. 2d 316, 322 (Mich.App. 1972).
In Maryland, the General Assembly has endorsed these purposes, stating that it is "the intent and purpose of [the alcoholic beverage law] that every retail dealer shall at all times, be and remain free to purchase the alcoholic beverages sold by him, from any holder of a manufacturer's or wholesaler's license." Article 2B, § 12-101. By keeping separate the different levels of distribution and discouraging horizontal and vertical integration of the alcoholic beverage industry, these laws prevent liquor manufacturers, brewers, and wholesalers from "artificially stimulating the sale of their product by certain controls over a retail licensee to the detriment of the general public and the industry at large." Id. See generally Article 2B, §§ 1-101 and 12-101 to 12-107.
B. Relation to Licensing Provisions
A related section of the alcoholic beverage law casts light on the use of the term "financial interest" in § 12-104. That section lists the required contents of retail license applications, including representations as to "financial" or "pecuniary" interests in the prospective licensee. See Article 2B, § 10-103(b).[3] In particular, an application for a retail license must include a statement that the applicant has a "pecuniary interest" in the business to be conducted under the license and that no other person is "in any way pecuniarily interested" in that business. Id., § 10-103(b)(10), (15).
That same section requires the applicant to affirm that no manufacturer or wholesaler, "directly or indirectly" has a "financial interest" in the applicant. Article 2B, § 10-103(b)(15). In addition, the applicant must affirm that it has no indebtedness or "financial obligations, directly or indirectly" to any manufacturer or wholesaler.Id. These requirements are apparently a means to enforce prospectively the prohibition against tied houses in §§ 12-101,12-104.
The use of the phrases "pecuniarily interested" and "financial interest" in the same subsection of § 10-103 suggests that the two terms have different meanings. In a 1983 opinion, Attorney General Sachs concluded that a "pecuniary interest" in this context means an ownership interest. 68 Opinions of the Attorney General 42, 43 (1983) (citing Cohen v. Orlove, 190 Md. 237, 243, 57 A.2d 810 (1948)). By contrast, it appears that the Legislature intended "financial interest" to encompass a broader class of interests than an ownership interest. In § 10-103(b)(15), an applicant must represent that it is theonly person "in any way pecuniarily interested" in the retail business. If "financial interest" denoted only an ownership interest, the additional representation that no manufacturer or wholesaler had any "financial interest" in the business would be superfluous. A cardinal rule of statutory construction is to give all terms meaning and not to render any language of a statute superfluous. Jung v. SouthlandCorp., 351 Md. 165, 717 A.2d 387 (1998). Because "financial interest" cannot mean simply an ownership interest — a construction that would render it superfluous in § 10-103(b)(15) — the term must have a broader meaning.
C. Common Understanding
A broader construction of the term "financial interest" would be consistent with common usage. One legal dictionary defines the term as an "interest equated with money or its equivalent." Black's LawDictionary at p. 631 (6th ed. 1990). "Interest," in turn, is defined as "[t]he most general term that can be employed to denote a right, claim, title, or legal share in something." Id. at p. 729. Thus, the common meaning of "financial interest" is a broad one: a right or claim to something equated with or denominated in money. Accordingly, a "financial interest" may embrace myriad relationships that can be expressed in monetary terms.
In other contexts in which the term "financial interest" appears but is undefined, the courts have construed it broadly. See, e.g.,Graham v. McGrail, 345 N.E.2d 888, 892 (Mass. 1976) (Under Massachusetts' conflict-of-interest rules, the interest of "an employee in his own compensation is unquestionably a `financial interest.'");Cabanas v. Gloodt Associates, 942 F.Supp. 1295, 1306 (E.D. Cal. 1996),aff'd, 141 F.3d 1174 (9th Cir. 1998) (interest of a mortgage lender constituted a "financial interest" under provision in Restatement of Torts).
D. Insignificant Interests
While the term "financial interest" is a broad one that encompasses interests other than ownership, we do not believe that it was intended to encompass a remote or insignificant interest, even if that interest technically represents an ownership interest. In our opinion, a "financial interest" in the context of a prohibition against "tied houses" must connote an interest that includes some degree of influence over the activities of the retail business. Relatively insignificant interests, even if they technically amount to "ownership" of some part of the retail business, do not portend the vertical integration of the industry that is forbidden by § 12-104. See generally 78 Opinions of theAttorney General 26, 38-39, (1993) (discussing the de minimis doctrine).
For example, a person employed by a wholesaler may own a small amount of stock in a publicly traded corporation with a restaurant division that happens to hold a retail license in Maryland. Such a person technically has an ownership interest in the retail licensee although that interest is minuscule in percentage terms, the person does not exercise even minimal control or influence over any activities of the licensee, and the interest does not pose even a remote threat of creating a "tied house."[4] Cf. Opinion of the Attorney General ofOregon, 42 Or. Op. Atty. Gen. 151 (1981) (concluding that grant of retail license to limited partnership did not contravene Oregon tied house law even though one of limited partners owned 1% of stock of manufacturer).
In two analogous contexts, State law defines de minimis exceptions to the concept of "financial interest." For example, the Maryland Public Ethics Law restricts a public official from participating in matters in which the official has a "financial interest" and from having a "financial interest" in an entity subject to the official's authority. In that statute, "financial interest" is equated with ownership of more than 3% of a business entity or an interest entitling the owner to receive more than $1,000 per year.See Md. Ann. Code, State Government Article ("SG"), § 15-102(n), (t).[5]
Similarly, Canon 3 of the Maryland Code of Judicial Conduct provides that a judge should not preside over a case if the judge — or the judge's spouse or child — has a significant financial interest in the proceeding. The Code defines "financial interest" to include not just an ownership interest, but management responsibilities as well. However, the Code carves out exceptions for interests in mutual or common investment funds, government securities, and proprietary interests or mutual savings associations and insurance companies. Maryland Rule 16-813 (Maryland Code of Judicial Conduct).[6]
E. Summary
Consistent with the ordinary meaning of the term "financial interest," we believe that the Legislature intended that the term encompass a broad variety of interests that can be expressed in monetary terms. In the context of an opinion we cannot set forth every transaction or relationship constituting a "financial interest." However, we believe that the term embraces an ownership or stock interest in an entity and employment with a retail licensee.
In our opinion, a loan or guarantee of a loan provided by a wholesaler or manufacturer to a retailer outside of the ordinary course of distribution of alcoholic beverages would also give the manufacturer or wholesaler a "financial interest" in the retailer.[7] However, we note that the statute directly prohibits a loan of money "or any other thing of value" by a manufacturer or wholesaler. Article 2B, § 12-104(b)(2). Although that provision could be read to bar wholesalers or manufacturers from extending any sort of credit to a retailer, another section of the law clarifies that this prohibition is not meant to eliminate short-term credit that is typical of a supplier-retailer relationships. See Article 2B, § 10-103(b)(15) (applicant for retail license must affirm no indebtedness "other than for the purchase of alcoholic beverages"). Thus, a loan or loan guarantee outside the ordinary course of business is forbidden whether or not it amounts to a "financial interest."
Finally, we note that it has been the longstanding practice of the Alcohol and Tobacco Tax Unit of the Comptroller of the Treasury's Office to consider an ownership or stock interest, an employment relationship, a loan and the guaranty of a loan or other security as a "financial interest". The courts generally accord deference to a longstanding interpretation of a statute by the agency charged with administering the statute. Mariott Employees Federal Credit Union v. Motor VehicleAdministration, 346 Md. 437, 445, 697 A.2d 455 (1997).
 III Financial Interest of Spouse
You have also asked whether the prohibition in § 12-104 against a wholesaler's or manufacturer's financial interest in a retail licensee extends to the spouse of a person connected with a wholesaler or manufacturer. In other words, may a spouse of a person associated with a manufacturer or wholesaler have an ownership interest in, make a loan to, or be employed by, a retail licensee?
Section 12-104 itself is silent on whether its prohibition extends to the spouse of a person associated with a wholesaler or manufacturer. However, the provisions concerning license applications in § 10-103
again provide a helpful gloss on the construction of § 12-104. An applicant for a retail license must affirm that no wholesaler or manufacturer has a financial interest "directly or indirectly" in the retail business. The use of the phrase "directly or indirectly" suggests that the statutory prohibition embraces a financial interest that is not formally in the name of the associated person. The legislative purpose of preventing tied houses would be defeated if a person associated with a wholesaler could circumvent that prohibition by obtaining an interest in a retailer through a nominee or in some other indirect fashion.
Whether the interest of one spouse in a retailer amounts to an indirect financial interest of the other spouse will depend on the nature of the interest and the extent to which the spouses maintain independent finances. A substantial ownership interest of one spouse in a retailer might be a strong factor in favor of attributing an indirect financial interest to the other spouse. For example, if one spouse wholly owned a retailer and the other spouse controlled a wholesaler, the arrangement suggests a degree of vertical integration, even if the spouses maintained separate finances. In addition, whether the spouse's interest was acquired during the marriage may also be a factor, as it may establish certain rights of the other spouse to that property under the State's domestic relations law. See Annotated Code of Maryland, Family Law Article, ("FL"), § 8-201(e) (marital property includes "property, however titled, acquired by one or both parties during the marriage."); cf. State Ethics Commission Opinion 97-10 (referring to FL § 8-201 to assess spousal interests under Public Ethics Law).
In a related context, previous opinions of the Attorney General have considered whether the spouse of a retail licensee may obtain a retail license in a jurisdiction that permits only one license per person. Those opinions have concluded that the answer depends on whether the spouses have a common pecuniary interest — a question of fact to be determined by the licensing authority. 45 Opinions ofthe Attorney General 5, 6 (1960); 34 Opinions of the AttorneyGeneral 86, 87 (1949); cf. 32 Opinions of the Attorney General 58, 59-60 (1947) (if joint funds of a husband and wife are used to establish a liquor business, both spouses must apply for a license). Each of those opinions noted that the license application required a statement that the applicant was not pecuniarily interested[8] in any other place of business in the county to which the license applied and a statement that no person except the applicant was pecuniarily interested in the license or in the business. Because spouses often, though not always, maintain joint finances, and therefore share a pecuniary interest, those opinions concluded that the question was to be decided on a case-by-case basis. Although it has become more common for spouses to have independent careers and separate finances in the years since those opinions were written, the principle that underlies those opinions remains valid.
We see no reason why a different result should obtain when the person holding the ownership interest in, making a loan to, or being employed by a retail licensee is married to a person connected with a wholesaler or manufacturer. A similar concern over the shared financial interests of the husband and wife exists in this situation. A restriction on the number of retail licenses in a particular jurisdiction prevents horizontal integration of the retail industry while the prohibition against tied houses is rooted in a policy against vertical integration.
Therefore, we conclude that whether an interest of a person in a retailer should be attributed to a spouse who is connected with a wholesaler or manufacturer depends on the nature of the interest and whether the spouses maintain separate finances. In the context of a license application, these are questions of fact to be decided by the licensing authority. The married couple itself has at hand information concerning its financial arrangements and must demonstrate to the satisfaction of the Comptroller that a spouse's financial interest in a retail establishment does not amount to an indirect interest of the other spouse.
 IV Conclusion
For the reasons stated above, we conclude that the term "financial interest" in § 12-104 of the State alcoholic beverage law includes, among other things, an ownership interest in, and employment with, a retail licensee. The alcoholic beverage law bars a manufacturer or wholesaler from providing a loan or loan guarantee for the benefit of a retailer outside of the ordinary course of business, regardless of whether it would be considered a financial interest. Whether a spouse of a person connected with a manufacturer or wholesaler may have a financial interest in a retail licensee depends on the nature of the spouse's interest and extent to which the spouses maintain separate finances. A remote or insignificant interest, even if technically an ownership interest, would not constitute a financial interest under thede minimis doctrine.[9]
J. Joseph Curran, Jr.
Attorney General
Reneè Nacrelli
Assistant Attorney General
Robert N. McDonald
Chief Counsel
 Opinions and Advice
[1] Roberts v. Total Health Care, Inc., 349 Md. 499, 523, 709 A.2d 142
(1998).
[2] See 27 U.S.C. § 205(b) (prohibiting manufacturers and wholesalers from engaging in certain practices that may lead to exclusionary dealings with retailers).
[3] Applicants for retail licenses must state in a license application that, among other things:
 (10) . . . the applicant has a pecuniary interest in the business to be conducted under said license;
 (15) no person except the applicant is in any way pecuniarily interested in said license or in the business . . . and . . . no manufacturer, brewer, distiller, or wholesaler, directly or indirectly, has any "financial interest" in the premises or business of the applicant . . .; and that the applicant has at the time of making the application no indebtedness or other financial obligation, directly or indirectly, to any manufacturer, brewer, distiller or wholesaler other than for the purchase of alcoholic beverages.
Article 2B, § 10-103(b)(10), (15) (emphasis added).
[4] The threat is even more attenuated if the person's interest in the corporate licensee is held through a mutual fund. Indeed, the person may be unaware of any imputed interest in the licensee.
[5] The Public Ethics Law defines "financial interest" as follows:
 (n)(1) ownership of an interest as the result of which the owner has received within the past 3 years, is currently receiving, or in the future is entitled to receive, more than $1,000 per year; or
 (2)(i) ownership of more than 3% of a business entity; or
 (ii) ownership of securities of any kind that represent, or are convertible into, ownership of more than 3% of a business entity.
SG § 15-102(n). It also includes a definition of "interest":
 (t)(1) "Interest" means a legal or equitable economic interest that is owned or held wholly or partly, jointly or severally, or directly or indirectly, whether or not the economic interest is subject to an encumbrance or condition.
 (2) "Interest" does not include:
 (i) an interest held in the capacity of agent, custodian, fiduciary, personal representative, or trustee, unless the holder has an equitable interest in the subject matter;
 (ii) an interest in a time or demand deposit in a financial institution;
 (iii) an interest in an insurance policy, endowment policy, or annuity contract by which an insurer promises to pay a fixed amount of money in a lump sum or periodically for life of a specified period; or
 (iv) a common trust fund or a trust that forms part of a pension or a profit-sharing plan that:
 1. has more than 25 participants; and
 2. is determined by the Internal Revenue Service to be a qualified trust under § 401 or § 501 of the Internal Revenue Code.
SG § 15-102(t).
[6] The Maryland Code of Judicial Conduct defines "financial interest" as follows:
 (c) "financial interest" means ownership of a legal or equitable interest, or a relationship as director, advisor, or other active participant in the affairs of a party, except that:
 (i) ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;
 (ii) an office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest' in securities held by the organization;
 (iii) the proprietary interest of a policy holder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the interest;
 (iv) ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.
Canon 3(c)(3)(c).
[7] Cf. State Ethics Commission Opinion No. 82-13 (loan to a corporation is an "interest" in the corporation for purposes of Public Ethics Law).
[8] As noted above, that requirement remains a part of State law.See footnote 3 above. Common pecuniary interest in this context means ownership interest. 68 Opinions of the Attorney General 42, 43 (1983).
[9] The Office of the Comptroller may wish to consider to issuing interpretive regulations that construe "financial interest" under the State alcoholic beverage law in light of the principles outlined in this opinion and the experience of the Alcohol and Tobacco Tax Unit with the alcoholic beverage industry. Those regulations could not only define "financial interest" but could also indicate what is not be a financial interest for purposes of § 12-104. See, e.g., COMAR 19A.02.02
(regulations of State Ethics Commission setting forth exceptions to prohibition against certain financial interests)
 *Page 33