Dear Mr. Larry S. Tolliver
You have asked for our opinion concerning a part of the State law that establishes a three-tier system — i.e., suppliers (also called dealers or manufacturers), wholesalers, and retailers — for the distribution for alcoholic beverages in Maryland. You focus on a provision that explicitly forbids the issuance of a nonresident dealer's permit to an entity with an interest in a licensed wholesaler. We summarize your questions as follows:
(1) May the Comptroller issue a nonresident dealer permit to an applicant after the normal review process if the applicant is in compliance with all the requirements of the alcoholic beverages law at that time, but the Comptroller believes that the applicant will purchase a licensed wholesaler in the future?
(2) If, after obtaining the nonresident dealer's permit, a non-resident dealer purchases a licensed wholesaler, must the dealer relinquish the permit?
In our opinion, if an applicant for a nonresident dealer permit satisfies the statutory prerequisites at the time of application, the Comptroller may issue the permit. Indeed, the Comptroller may not deny the permit solely on the basis of an anticipated future acquisition. If the dealer should later obtain an interest that would render it ineligible for the issuance of a permit, it should relinquish the permit; otherwise, the Comptroller may cancel the permit.
 I Alcoholic Beverages Law
The State alcoholic beverages law was enacted shortly after the repeal of Prohibition. Chapter 2, Laws of Maryland 1933 (Special Session), codified as amended at Annotated Code of Maryland, Article 2B.[1] The law generally prohibits the sale, transportation, or importation of alcoholic beverages without a license or permit. § 12-01; see also § 16-506.1 (a business that sells or distributes alcoholic beverages may not ship or deliver alcoholic beverages into Maryland without the appropriate license or permit).
Various titles of Article 2B set forth qualifications and fees for different types of licenses and permits, as well as the procedures for obtaining a license or permit.[2] Since the inception of that law, a key component has been the separate licensing of three levels of distribution to prevent the "disorderly distribution" of such products. See 84 Opinions ofthe Attorney General 21, 22-23 (1999); 83 Opinions of theAttorney General 3, 4-5 (1998). For example, the law has long prohibited manufacturers or wholesalers from having an interest in a retailer. Annotated Code of Maryland, Article 2B, § 28 (1933), now codified as Article 2B, § 12-104(b).
Among the permits and licenses specified for the supplier level of distribution is a nonresident dealer's permit. An out-of-State entity that wishes to sell beer, wine, or distilled spirits to Maryland licensees authorized to receive those beverages must obtain such a permit. § 2-101(i)(1). Among the individuals and entities that may qualify for such a permit are brewers, distillers, rectifiers, bottlers, manufacturers, vintners, wineries, and importers, as well as the sales agents for such entities. § 2-101(i)(1)(i)-(iv).
As with other license and permit applications, the Comptroller is to "cause an investigation to be made regarding the applicant" prior to issuing a nonresident dealer permit. § 10-201. The statute authorizes the Comptroller to deny the application if the applicant is not a "fit person" for such a license or permit, if the applicant has made a material false statement or committed a fraud in connection with the application, or "there are other reasons, in the discretion of the Comptroller," to deny the application. Id.
Once obtained, a permit expires each year on October 31. § 21-01(b)(2). To renew the permit, the applicant must continue to satisfy the statutory requirements. § 10-301(a)(1)(ii), (b) (application for renewal of license or permit must include statement that facts in the original application are unchanged or is to be treated as an original application).[3]
The statute provides that the Comptroller may "cancel, restrict, suspend, or revoke" a permit. § 2-101(a). Another provision of the alcoholic beverages law sets forth various circumstances under which the Comptroller must "revoke" or "suspend" a permit — e.g., conviction of certain offenses, willful failure to comply with a provision of the alcoholic beverages law. § 10-401(a)(3).
Pertinent to your questions, the law forbids the issuance of a nonresident dealer's permit when the applicant holds a license for another tier of distribution or has an interest in an entity holding such a license. The statute provides:
 A nonresident dealer's permit may not be issued to a person who:
 (i) Holds a wholesaler or retailer license of any class issued under this article;
 (ii) Has an interest in a wholesaler licensed under this article, other than a disclosed legal, equity, or security interest of a malt beverage wholesaler; or
 (iii) Has an interest in a retailer licensed under this article.
§ 2-101(i)(2).
You advise that an applicant for a nonresident dealer permit currently qualifies for the permit. However, the Comptroller's Office understands that the applicant plans to purchase a licensed Maryland wholesaler in the future. You ask whether, in light of that information, the Comptroller may issue the nonresident dealer permit and whether the Comptroller must take some action with respect to the permit if the contemplated transaction occurs.
 II Analysis
If an applicant currently qualifies for a nonresident dealer permit, nothing in the alcoholic beverages law or the Comptroller's regulations adopted under that law indicates that the Comptroller must deny the permit based on an expectation that the applicant would not qualify for the permit at some time in the future. Thus, in our view, a permit may be issued in the circumstances you describe. Indeed, the Comptroller may not deny the permit solely on the basis of an anticipated future acquisition.
Your second question essentially is whether the status of an existing permit is affected by a transaction that would disqualify the holder for a renewal of that permit. The time period in question could be quite short. For example, any nonresident dealer permit issued within the next few weeks will expire on October 31, 2006. If a permit were issued on September 15, 2006, and the nonresident dealer obtained an interest in a Maryland licensed wholesaler on September 30, 2006, the dealer would not qualify for a renewal of the permit for the period after October 31, 2006. Must the dealer relinquish the license for the period September 30 through October 31, 2006?
One might read § 2-101(i)(2) literally to govern only the circumstances at the time a permit is issued and not to affect the permit holder's status until the permit came up for renewal. However, as noted above, the Legislature has given the Comptroller the power to cancel, restrict, suspend, or revoke a license or permit. § 2-101(a). Nothing in the statute limits those powers to circumstances in which a license or permit was erroneously granted. In our view, the Comptroller has authority to cancel, restrict, suspend, or revoke permits to take account of changed circumstances. Indeed, the law directs the Comptroller to revoke or suspend a license on the basis of certain types of wrongdoing by the licensee after the issuance of a license. § 10-401(a)(3). The answer to your question depends on whether the Legislature intended that a nonresident dealer's ownership of a Maryland wholesaler would be a disqualifying factor solely at the time of the permit application or would be a continuing qualification for the entity to hold a permit. Cf.
80 Opinions of the Attorney General 269 (1995) (residency requirement for appointment to office construed to be a "continuing qualification").
The legislative history of § 2-101(i)(2) is instructive. The prohibition against issuing a nonresident dealer permit to a person who has an interest in a wholesaler or retailer was added to the alcoholic beverages law in 1998. Chapter 296, Laws of Maryland 1998. According to materials in the legislative file, the impetus for this legislation came from the Comptroller's Office. In early 1998, the Director of the Alcohol and Tobacco Tax Unit of the Comptroller's Office wrote to the Chairman of the House Economic Matters Committee with several suggestions for strengthening the three-tier alcoholic beverage distribution system by closing perceived loopholes among the tiers. Letter from Dr. Charles W. Ehart to Delegate Michael E. Busch (January 30, 1998). As an example, the Director noted that "under existing law an out-of-state supplier could technically own and operate a wholesale business in Maryland." Id.
Shortly thereafter, House Bill 1136 (1998) was introduced. The Comptroller's Office submitted written testimony that the bill was "intended to clarify the three-tier system . . . [which] . . . assures an orderly distribution for alcoholic beverage products and generally requires a separation between the three tiers — supplier, wholesaler, and retailer." Testimony of Dr. Charles W. Ehart before the House Economic Matters Committee (March 9, 1998). The Comptroller's Office also reiterated the concern that it would be "technically" possible under the then current law for an out-of-state supplier to own a Maryland wholesaler, thus blurring the lines between the tiers of distribution. Id. Accordingly, the bill was intended to "generally prohibit an entity from holding a license at more than one level."[4] The House Floor Report described the bill in similar terms. Floor Report for House Bill 1136 (1998).
Thus, the legislative history evidences a legislative understanding that a "loophole" was being closed and that a barrier was being erected to prevent a blurring of the lines between the supplier and wholesaler tiers of the alcoholic beverage distribution system. It is difficult to discern any purpose in allowing a supplier to avoid that barrier by simply delaying purchase of a wholesaler until after the issuance of the dealer permit. Moreover, the purchase would clearly prevent renewal of the permit upon its expiration on the following October 31.
It is also notable that the 1998 legislation included an uncodified grandfather provision that allowed for an entity currently holding both a nonresident dealer's permit and a wholesaler license to continue to renew both the permit and the license, so long as it kept separate books of account for the two businesses. Chapter 296, § 2, Laws of Maryland 1998. It appears very unlikely that the General Assembly expected that the legislation would allow for the creation of a new category of dual license holders not subject to that restriction. The inclusion of the uncodified grandfather clause supports the conclusion that the Legislature contemplated that a nonresident dealer's new acquisition of an interest in a wholesaler[5]
would lead to cancellation of the entity's nonresident dealer permit.
 III Conclusion
For the reasons explained above, if an applicant for a nonresident dealer permit satisfies the statutory prerequisites at the time of application, the Comptroller may issue the permit. If the dealer should later obtain an interest that would render it ineligible for the issuance of a permit, it should relinquish the permit; otherwise, the Comptroller may cancel the permit.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] Statutory citations in this opinion are to Annotated Code of Maryland, Article 2B (2005 Repl. Vol.), unless otherwise indicated.
[2] The Comptroller has elaborated on those provisions in regulations and administrative bulletins. See COMAR 03.02.01,03.02.05; see also http://compnet.comp.state.md.us/Regulatory_and_Enforcement_Division/Alcohol_and_Tobacco_Tax_Bureau/Alcohol_Tax_Information/Administrative_News_and_Forms/Alcoholic_Beverages_Administrative_Releases.shtml.
[3] The cited portion of § 10-301 concerns procedures related to "license holders." By definition, that phrase includes the holder of a permit. § 1-102(a)(15).
[4] The Comptroller's Office also suggested two minor amendments, not relevant to this discussion, which the General Assembly adopted when it enacted the bill.
[5] You have not asked, and we have not considered what, apart from outright ownership, would constitute a disqualifying "interest in a wholesaler" for purposes of the statute. *Page 181