Dear Larry W. Tolliver
In 91 Opinions of the Attorney General 174 (2006), we answered questions you had posed concerning the interpretation of Annotated Code of Maryland, Article 2B, § 2-101(i)(2)(ii), which prohibits the issuance of a nonresident dealer permit for alcoholic beverages to one who has an interest in a licensed Maryland wholesaler. In particular, we advised you that, if the holder of a nonresident dealer permit were to purchase a Maryland wholesaler, the dealer should relinquish the permit or the permit could be canceled by the Comptroller.
You now ask whether the same result would pertain if a corporation which shares some common ownership with a nonresident dealer were to purchase a Maryland wholesaler. Your question is based on two corporate structures that were proposed for a corporation that would become the owner of a Maryland wholesaler. In one scenario, three individuals would, through several corporations formed for this purpose, collectively own 100% of the wholesaler; those individuals also collectively own 5.6% of the nonresident dealer, again through corporate entities. In a second scenario, the corporation purchasing the Maryland wholesaler would be owned by one individual who also owns 0.33% of the nonresident dealer through a corporate entity. We understand from counsel for the parties that these percentage stakes would have represented the entire interest of each of these individuals in each scenario and that the individuals would have had no additional voting control or other interest in the various corporations in the ownership structure of the wholesaler and nonresident dealer. Our opinion is based in part on that representation.[1]
Assistant Attorney General Gerald Langbaum addressed these two scenarios in memoranda to you dated October 3 and October 20, 2006. Copies of those memoranda are attached. Mr. Langbaum concluded that a scenario in which the owners of the Maryland wholesaler would have a 5.6% interest in the nonresident dealer would not be permissible under § 2-101(i)(2)(ii). By contrast, Mr. Langbaum concluded that the scenario in which the owners of the Maryland wholesaler would have a 0.33% interest in the nonresident dealer would not offend § 2-101(i)(2)(ii), as it would be a de minimis interest. See 84 Opinions of the AttorneyGeneral 21, 26-28 (1999) (discussing the concept of "insignificant interests" in the context of Article 2B).
We have reviewed Mr. Langbaum's memoranda and agree with his analysis and conclusions.[2]
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
 J. Joseph Curran, Jr. Attorney General
 Donna Hill Staton Maureen M. Dove Deputy Attorneys General
 Gerald Langbaum Assistant Attorney Genera!
 Counsel to the Comptroller
 John K. Barry Assistant Attorney Genera!
 MEMORANDUM TO: Larry W. Tolliver
FROM: Gerald Langbaum
DATE: October 3, 2006
RE: Article 2B § 2-101(i)(2)(ii)
In an opinion to you issued on September 8, 2006 (91 Op. Att'y Gen. 174) the Attorney General concluded that if an applicant for a nonresident dealer permit satisfies the statutory prerequisites at the time of application, the Comptroller may issue the permit. Moreover, the opinion held that if the nonresident dealer should later obtain an interest that would render it ineligible for the issuance of a permit, the nonresident dealer should relinquish the permit or otherwise the Comptroller may cancel it.
The basis for that opinion was Article 2B § 2-l0l(i)(2)(ii) which provides that a nonresident dealer permit may not be issued to a person who has an "interest in a wholesaler." In footnote 5 to the opinion, the Attorney General noted that you had not asked, and therefore the opinion had not considered, "what, apart from outright ownership, would constitute a disqualifying `interest in a wholesaler' for purposes of the statute."
You have now requested guidance on that precise question: what constitutes a disqualifying "interest in a wholesaler." The question arises from the same set of facts that prompted the Attorney General's previous opinion. As I understand the contemplated transaction, a new corporation would be created to acquire an existing licensed Maryland wholesaler. That corporation wouldbe owned, inequal parts, bythree individuals: BF, JS and RH. The entity seeking the nonresident dealer permit is owned, equally, by three corporations. BF owns 5% of one of those corporations; JS owns 1% of a second of those corporations; and RH owns 10.807% of the third of those corporations. Thus, BF would own 1.67% of the nonresident dealer; JS would own 0.33% of the nonresident dealer; and RH would own 3.6% of the nonresident dealer. Collectively, the three individuals who would own 100% of the wholesaler would own 5.6% of the nonresident dealer.
In 1999, the Attorney General addressed the question of what constitutes a "financial interest" in the context of a different provision of the alcoholic beverage laws. The Attorney General was interpreting Article 2B § 12-1 04(b)(i) which provided that a business entity (defined to mean any manufacturer, wholesaler, or person connected with either a manufacturer or wholesaler) may not have any "financial interest" in a premise in which alcoholic beverages aresold at retail. While holding that the term "financial interest" was a broad one that encompassed interests other than ownership, the Attorney General noted that a "financial interest
 must connote an interest that includes some degree of influence over the activities of the retail business. Relatively insignificant interests, even if they technically amount to "ownership" of some part of the retail business, do not portend the vertical integration of the industry that is forbidden by § 12-104.
84 Op. Att'y Gen. 21 (1999) (emphasis added).
Left unanswered was what constituted an "insignificant interest." The opinion noted that under the Maryland Public Ethics Law a financial interest was equated with ownership of more than 3% of a business entity. While that does not purport to identify what is or is not "insignificant," it is helpful in addressing the question of whether a 5.6% interest is "insignificant."
In the opinion to you dated September 8, 2006, the Attorney General noted the legislative history of 1998 legislation (House Bill 1136) that amended Article 2B § 2-101(i)(2)(ii). The opinion noted that the legislative history "evidences a legislative understanding that a `loophole was being closed and that a barrier was being erected to prevent a blurring of the lines between the supplier and wholesaler tiers of the alcoholic beverage
distribution system." Indeed, the opinion noted testimony from the Comptroller's Office in support of the 1998 legislation that the legislation was desirable because of the concern that then existing law would permit "an out-ofstate supplier to own a Maryland wholesaler, thus blurring the lines between the tiers of distribution."
Under these circumstances, and with due regard for keeping the lines between the three tiers from being blurred, I am unable to conclude that a 5.6% interest in a nonresident dealer is an insignificant interest. Because I cannot so conclude, it is my view that in the contemplated transaction, the nonresident dealer, 5.6% of which would be owned by the persons owning 100% of a wholesaler, would not be entitled to a nonresident dealer permit because it would have an interest in a wholesaler. As noted in the September 8, 2006 opinion, while an anticipated future acquisition does not afford a basis to deny issuance of a nonresident dealer permit, the subsequent acquisition by the nonresident dealer of an interest in a wholesaler, as contemplated, would require the nonresident dealer to relinquish the permit. If not relinquished, the Comptroller may then cancel the permit.
I trust this is responsive to your inquiry.
 ADVICE OF COUNSEL NOT AN OPINION OF THE ATTORNEY GENERAL MEMORANDUM TO: Larry W. Tolliver
FROM: Gerald Langbaum
DATE: October 20, 2006
RE: Article 2B § 2-l0l(i)(2)(ii)
In an opinion to you issued on September 8, 2006 (91 Op. Att'y Gen. 174) the AttorneyGeneral concluded that if an applicant for a nonresident dealer permit satisfies the statutory prerequisites at the time of application, the Comptroller may issue the permit. Moreover, the opinion held that if the nonresident dealer should later obtain an interest that would render it ineligible for the issuance of a permit, the nonresident dealer should relinquish the permit or otherwise the Comptroller may cancel it.
The basis for that opinion was Article 2B § 2-101 (i)(2)(ii) which provides that a nonresident dealer permit may not be issued to a person who has an "interest in a wholesaler." In footnote 5 to the opinion, the Attorney General noted that you had not asked, and therefore the opinion had not considered, "what, apart from outright ownership, would constitute a disqualifying `interest in a wholesaler' for purposes of the statute."
Following the issuance of the Attorney General's opinion on September 8, you requested guidance on the precise question that was not considered in the opinion: What constitutes a disqualifying "interest in a wholesaler." You presented the following factual scenario: a new corporation would be created to acquire an existing licensed Maryland wholesaler. That corporation would be owned, in equal parts, by three individuals: BF, JS and RH. The entity seeking the nonresident dealer permit is owned, equally, by three corporations. BF owns 5% of one of those corporations; JS owns 1%ofa second of those corporations; and RH owns 10.807% of the third of those corporations. Thus, BF would own 1.67% of the nonresident dealer; JS would own 0.33% of the nonresident dealer; .and RH would own 3.6% of the nonresident dealer. Collectively, the three individuals who would own 100% of the wholesaler would own 5.6% of the nonresident dealer.
Relying primarily on a 1999 opinion of the Attorney General that held that "relatively insignificant interests" did not amount to a prohibited "financial interest," I concluded that a 5.6% ownership interest wasnot a relatively insignificant interest, and I therefore reached the ultimate conclusion that a "nonresident dealer, 5.6% of which would be owned by the persons owning 100% of a wholesaler, would not be entitled to a nonresident dealer permit because it would have an interest in a wholesaler."
You have now requested my guidance on a revised version of the contemplated corporate structure in which the new corporation created to acquire an existing licensed Maryland wholesaler would be 100% owned by JS. The ownership of the entity seeking the nonresident dealer permit would be unchanged: equally, by three corporations, with BF owning 5% of one of those corporations, JS owning 1% of a second of those corporations, and RH owning 10.807% of the third of those corporations. Because neither BF nor RH would own an interest in the new wholesaler, the only overlapping of ownership involves JS who would own 100% of the wholesaler and 0.33% of the nonresident dealer. Restated, your question is whether the ownership by an individual of a 0.33% interest in a nonresident dealer by a person who owns 100% of a wholesaler is a disqualifying "interest in a wholesaler" under Article 2B § 2 — 101(i)(2)(ii).
While I do not believe it is possible to draw a bright line, I am compelled to conclude that a 0.33% interest is a "relatively insignificant interest" and therefore is not a precluded interest. In my view, this result is consistent with the intent of the 1998 legislation (H. B. 1136) that was discussed in the Attorney General's September 8, 2006 opinion. The AttorneyGeneral quoted testimonyfrom the Comptroller's Office that the legislation was needed because existing law might pennit "an out-of-state supplier to own a Maryland wholesaler, thus blurring the lines between the tiers of distribution." In my view, JS's ownership of one-third of 1% of the nonresident dealer does not render the nonresident dealer the owner of the wholesaler. One-third of 1% is, in my opinion, an insignificant interest.
To summarize, in the revised corporate structure, BF and RH are not owners of the wholesaler and therefore the totality of the interests of the owners of the nonresident dealer in the wholesaler is JS's one-third of 1% (as opposed to the 5.6% collective interest addressed in my October 3 memo). In my view, JS's one-third of 1% interest in the nonresident dealer does not amount to him or the nonresident dealer having a prohibited interest in the wholesaler under § 2-l0l(i)(2)(ii).
I trust this is responsive to your inquiry.
 ADVICE OF COUNSEL NOT AN OPINION OF THE ATTORNEY GENERAL.
[1] We also assume that these interests do not fall within the statutory exception for "a disclosed legal, equity, or security interest of amalt beverage wholesaler." Article 2B, § 2-101(i)(2)(ii).
[2] We have been advised by counsel that the transaction that is thebasis of your questions has been abandoned. However, you indicated thatyou wish to have formal guidance on these questions for reference infuture applications. It is difficult to provide a simple bright line testbeyond the considerations previously outlined in 84 Opinions oftheAttorney General 21, 26-28 (1999), as there are likely to be myriadvariations of corporate structures and individual interests that could definea relationship between a nonresident dealer and a wholesaler. We stand ready to assist the Comptroller's Office in analyzing any of thosevariations that may be presented in the future.
 *Page 3